IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLARENCE GRANTHAM, <br>     Plaintiff, <br> v. <br> JOE TREMPUS, *Security Captain;* KERRI CROSS, *Hearing Ex.;* STEVEN GATES, *Deputy Superintendent*; BRIAN COLEMAN, *Superintendent*; MICHAEL ZAKEN, <br>     Defendants. | Civil Action No. 09 - 1338 <br><br> Magistrate Judge Lisa Pupo Lenihan |

## MEMORANDUM OPINION AND ORDER

Plaintiff, a pro se inmate confined at the State Correctional Institution at Cresson, Pennsylvania, commenced this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983 alleging violations of his rights with respect to his placement in Administrative Segregation and an alleged retaliatory misconduct. On April 27, 2010, Defendants filed a Partial Motion to Dismiss (ECF No. 19) along with a Brief in support (ECF No. 20). This Court has issued two orders for Plaintiff to file a response to Defendants' Motion. To date, Plaintiff has failed to respond to either order. Nor has he filed any request for an extension to respond. For the reasons set forth below, Defendants' Partial Motion to Dismiss will be granted and the remaining claim will be dismissed in accordance with the Prison Litigation Reform Act, 28 U.S.C. § 1915(e)(2)(B)(ii) and/or 28 U.S.C. § 1915A for failure to state a claim upon which relief can be granted under 42 U.S.C. § 1983.

### A. Plaintiff's Allegations and Record Facts

On July 7, 2009, Plaintiff received an order to report to the Security Department. When he arrived there, he was interviewed by Captain Trempus about a letter Trempus had obtained

containing Plaintiff's signature. Plaintiff denied having any knowledge about the letter and Captain Trempus told him that he would be placed in Administrative Custody (AC) if he did not tell him about the letter. When Plaintiff continued to deny any knowledge of the letter, he was taken to the Restricted Housing Unit (RHU).

On July 9, 2009, Plaintiff attended a hearing before the Program Review Committee (PRC). When he was asked why he was on AC status, Plaintiff replied that that he did not know because he had not received a DC-141 "other report." He claimed this error was a violation of his due process rights and argued that he should be released from the RHU because Department procedures had not been followed. Later in the afternoon of July 9, 2009, Plaintiff was issued an "Other Report" No. B 003750, which provides as follows.

> You are being placed on administrative custody per direction under DC-ADM 802-A-1f.
>
> The inmate has been charged with, or in under investigation for a violation of facility rules and there is a need for increased control pending disposition of charges or completion of the investigation.

ECF No. 7-1, p.1.

On July 11, 2009, Plaintiff filed Grievance No. 280600 claiming that his due process rights were violated because he did not receive the "other report" within 24 hours of his placement in AC, and because the person who served the notice did not bring it to Plaintiff's cell but put it in the house mail. On July 22, 2009, Plaintiff received the following response.

> Claim: That you were placed in the RHU on 7/7/09 on AC status but you never received any Other Report placing you under investigation until 7/9/09 and this is a violation of your due process and it violates the DC-ADM 802 policy. The person who signed the DC-141 to serve it was not the person who actually gave you the paperwork. You would like to be released from this investigation.

2

> To investigate your grievance I have done the following:
>
> 1. Reviewed your DC-141 Other Report
> 2. Talked to Sgt. Pierce
>
> Decision: Sgt. Pierce verified that you were take[n] to the RHU on 7/7/09, it was an oversight by the Security Department that you did not receive an Other Report at that time but once it was discovered that you didn't have one a DC-141 (Other Report) placing you on investigation was done. It is also correct that Ofc. Moats signed the report as the serving officer but did not actually serve it to you, but you did receive the report the same day it was written. You have been taken off investigation; you received a misconduct and are now considered Pre-Hearing Confinement. This grievance is without merit and denied in its entirety.

ECF No. 7-7.

In the meantime, on July 15, 2009, Plaintiff received Misconduct No. B 003750 (ECF No. 7-4) written by Captain Trempus charging him with the following infractions: Class 1A 33 - Using Abusive Obscene or Inappropriate Language to an Employee; Class 1A 25 - Sexual Harassment; and Class 1B 40 - Unauthorized Use of the Mail. In support of these charges, Captain Trempus wrote as follows.

> The security office was forwarded a letter that was confiscated from I/M Brown as he was attempting to pass it to I/M Jackson on F Unit. I/M Brown confirmed the letter was given to him by I/M Grantham at the meal. The letter was to "Shorty" asking for account balances and how to send the information to him. The letter is concluded with "I Love you." "I'm in Love with you." . . . . I/M Grantham confirmed he authored the letter. He also confirmed the intended recipient was CCI Mackay. A handwriting sample was conducted confirming the letter was authored by I/M Grantham. This M/C is written after the fact due to investigation process.

ECF No. 7-4.

Plaintiff received a misconduct hearing on July 17, 2009. During the hearing, Plaintiff

3

argued that the charges should be dismissed because he had been "locked up on A/C investigation for two days" before receiving an "other report" and could not defend himself at the 7/9/09 PRC hearing. He further claimed the misconduct report was filed in retaliation for his grievance on Trempus. He also admitted that he gave the letter to another inmate to deliver but denied that it was meant for Mackey. Plaintiff was found guilty of the Class 1A - 33 violation of using inappropriate language; the other two charges were dismissed. Plaintiff received thirty (30) days of disciplinary confinement as a result (ECF No. 7-5).

Plaintiff claims that Defendants violated his rights as protected by the First, Eighth and Fourteenth Amendments by placing him in AC without notice of the charges, issuing the misconduct in retaliation for his grievance, holding the PRC administrative hearing when they knew he was in the RHU without proper notice and by holding the misconduct hearing after finding out that he was in AC in error, and by finding him guilty.

### B. Standards of Review

Defendants have filed a Partial Motion to Dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) wherein the have moved to dismiss all claims with the exception of Plaintiff's retaliation claim. In deciding this motion, the court must read the complaint in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. Estelle v. Gamble, 429 U.S. 97 (1976). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753 n. 6 (1963). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v.Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson,

4

355 U.S. 41, 45-46 (1957)). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. *See* California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp., 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp., 550 U.S. at 555. Additionally, "a civil rights claim 'must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983." ' Coronado v. Goord, No. 99 Civ. 1674, 2000 WL 1372834, at *2 (S.D.N.Y. 2000) (quoting Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987)).[1] It is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the ... laws in ways that have not been alleged." Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. Pension Benefit Guar. v. White Consol. Indus., Inc.,

---

[1] *See also* Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1951 (U.S. 2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and providing further guidance on the standard set forth therein).

5

998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id*. (citations omitted). Moreover, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gillis 372 F.3d 218, 223 (3d Cir.2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

A court must employ less stringent standards when considering pro se pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). In a § 1983 action, the court must liberally construe the pro se litigant's pleadings and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)).[2]

In addition, this Court must review Plaintiff's Complaint in accordance with the amendments promulgated in the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996). Pertinent to the case at bar is the authority granted to federal courts for *sua sponte* screening and dismissal of prisoner claims. Specifically, Congress enacted a new statutory provision at 28 U.S.C. § 1915A, entitled "Screening," which requires the court to review complaints filed by prisoners seeking redress from a governmental entity or an officer or employee of a governmental

---

2. The Court further notes that the United States Court of Appeals for the Third Circuit has held that, in civil rights cases, a court must give a plaintiff the opportunity to amend a deficient complaint - regardless of whether the plaintiff requests to do so - when dismissing a case for failure to state a claim, unless doing so would be inequitable or futile. *See* Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007) (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)). This Court concludes that it would be futile to allow Plaintiff to amend his complaint.

entity. 28 U.S.C. § 1915A(a). If the complaint is "frivolous, malicious, or fails to state a claim upon which relief can be granted," or "seeks monetary relief from a defendant who is immune from such relief," the court must dismiss the complaint. 28 U.S.C. § 1915A(b).

In addition, Congress significantly amended Title 28 of the United States Code, section 1915, which establishes the criteria for allowing an action to proceed in forma pauperis (IFP), *i.e.*, without prepayment of costs. Section 1915(e) (as amended) requires the federal courts to review complaints filed by persons who are proceeding in forma pauperis and to dismiss, at any time, any action that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Plaintiff is considered a "prisoner" as that term is defined under the PLRA[3] and Defendants are officers or employees of governmental entities. In addition, Plaintiff has been granted leave to proceed in forma pauperis (ECF No. 2). Thus his allegations must be reviewed in accordance with the directives provided in 28 U.S.C. §§ 1915A & 1915(e). In reviewing complaints under 28 U.S.C. §§ 1915A & 1915(e), a federal court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).[4]

### C. Plaintiff's Claims and Liability under 42 U.S.C. § 1983

To state a claim for relief under section 1983, a plaintiff must meet two threshold

---

3. *See* 28 U.S.C. §§ 1915(h); 1915A(c).

4. *See, e.g.*, Bradley v. Puckett, 157 F.3d 1022, 1025 (5th Cir. 1998); Anyanwutaku v. Moore, 151 F.3d 1053 (D.C. Cir. 1998); Mitchell v. Farcass, 112 F.3d 1483, 1484 (11th Cir. 1997); McGore v. Wrigglesworth, 114 F.3d 601, 604 (6th Cir. 1997); Atkinson v. Bohn, 91 F.3d 1127, 1128 (8th Cir. 1996); Powell v. Hoover, 956 F. Supp. 564, 568 (M.D. Pa. 1997)(applying Rule 12(b)(6) standard to claim dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii)); Tucker v. Angelone, 954 F. Supp. 134 (E.D. Va.), *aff'd*, 116 F.3d 473 (Table) (4th Cir. 1997).

requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986). A plaintiff fails to allege a section 1983 claim if the court is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegation." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41 (1957).

In the case at bar, Plaintiff asserts liability against Defendants under the First, Eighth and Fourteenth Amendments. For the reasons that follow, Plaintiff fails to allege a section 1983 claim as the court is satisfied that no relief could be granted under any set of facts that could be proved consistent with his allegations.

1. First Amendment

Plaintiff claims that Defendants retaliated against him for filing Grievance No. 280600 by issuing him Misconduct No. B 003750. This claim invokes the protections of the First Amendment. In this regard, it is well settled that retaliation for the exercise of a constitutionally protected right is itself a violation of rights secured by the Constitution, which is actionable under section 1983. Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001); White v. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990). However, merely alleging the fact of retaliation is insufficient; in order to prevail on a retaliation claim, a plaintiff must show three things: (1) the conduct which led to the alleged retaliation was constitutionally protected; (2) that he was subjected to adverse actions by a state actor (here, the prison officials); and (3) the protected activity was a substantial motivating factor in the state actor's

decision to take the adverse action. *See* Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Anderson v. Davila, 125 F.3d 148, 163 (3d Cir. 1997).

If the plaintiff proves these three elements, the burden shifts to the state actor to prove that it would have taken the same action without the unconstitutional factors. Mt. Healthy, 429 U.S. at 287. "This means that, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334. Because retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner. *See* Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

A prisoner's ability to file grievances and lawsuits against prison officials is a protected activity for purposes of a retaliation claim. *See* Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981) (retaliation for exercising right to petition for redress of grievances states a cause of action for damages arising under the constitution); Woods, 60 F.3d at 1165 (prison officials may not retaliate against an inmate for complaining about a guard's misconduct). Plaintiff claims that the retaliation was the result of his filing a grievance. Thus, he had alleged the first element of a retaliation claim.

With respect to the second element, Plaintiff alleges that he was subject to a misconduct for which he received 30-days disciplinary time. This Court may conclude that he has alleged the second element of a retaliation claim, *i.e.*, that he was subjected to "adverse" action. *See* Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2002) (holding that prisoner's allegation that he was falsely

9

charged with misconduct in retaliation for filing complaints against a correctional officer sufficiently alleged a retaliation claim); Allah, 229 F.3d at 225 (holding that an allegation that a prisoner was kept in administrative segregation to punish him for filing civil rights complaints stated a retaliation claim).

It is the third element that limits Plaintiff's recovery, *i.e.*, that the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action. With respect to his allegations that the Defendants issued a false misconduct report, the filing of a prison disciplinary report is not actionable under 42 U.S.C. § 1983 as prohibited "retaliation" unless the report is, in fact, false. In other words, the finding of guilt of the underlying misconduct charge satisfies a defendant's burden of showing that he would have brought the misconduct charge even if plaintiff had not filed a grievance. *See* Harris-Debardelaben v. Johnson, 121 F.3d 708, 1997 WL 434357, at *1 (6th Cir. July 31, 1997); Hynes v. Squillace, 143 F.3d 653, 657 (2d Cir.), *cert. denied*, 119 S.Ct. 246 (1998); Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994) (a finding of guilty of a prison rule violation based on some evidence "essentially checkmates [the] retaliation claim."), *cert. denied*, 115 S.Ct. 2584 (1995). *See also* Carter v. McGrady, 292 F.3d 152 (3d Cir. 2002) (noting that even if prison officials were motivated by animus to jailhouse lawyers, there was sufficient evidence of the plaintiff's misconduct offenses to conclude that the misconducts would have issued notwithstanding his jailhouse lawyering); Allah v. Al-Hafeez, 208 F. Supp. 2d 520 (E.D. Pa. 2002).

Here, Plaintiff was issued a misconduct for writing a letter that contained inappropriate language to staff. Plaintiff admitted that he wrote the letter. This constitutes "some evidence" sufficient to support a prison disciplinary conviction. *See* Superintendent v. Hill, 472 U.S. 445, 455-56 (1985). Although Plaintiff disagrees with the factual findings of the hearing examiner, they

10

were upheld after pursuing all levels of review. Thus, Defendants have established that the same action would have been taken in the absence of any protected activity for reasons related to the legitimate penological goal of maintaining order in the institution. Consequently, Plaintiff has failed to state a claim upon which relief may be granted as to a violation of his First Amendment rights.

2. Eighth Amendment

Plaintiff also invokes liability under the Eighth Amendment. In this regard, the Eighth Amendment's prohibition against cruel and unusual punishment guarantees that prison officials must provide humane conditions of confinement. Prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

In order to make out a prima facie case that a prison official's actions violate the Eighth Amendment's prohibition against cruel and unusual punishment, an inmate must show two elements. First, a prisoner must show that the condition, either alone or in combination with other conditions, deprived him of "the minimal civilized measure of life's necessities," or at least a "single, identifiable human need." Wilson v. Seiter, 501 U.S. 294 (1991) (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). The Supreme Court has explained that the first showing requires the court objectively to determine whether the deprivation of the basic human need was "sufficiently serious."

> [E]xtreme deprivations are required to make out a conditions-of-confinement claim. Because routine discomfort is "part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation."

Hudson v. McMillan, 503 U.S. 1, 9 (1992) (citations omitted).

Second, an inmate must demonstrate deliberate indifference to prison conditions on the part of prison officials. Farmer, 511 U.S. at 833; Wilson, 501 U.S. at 297; Rhodes, 452 U.S. at 347. The second prong requires a court <u>subjectively</u> to determine whether the officials acted with a sufficiently culpable state of mind. *Id*. "[O]nly the unnecessary and wanton infliction of pain implicates the Eighth Amendment." Farmer, 511 U.S. at 834 (quotation omitted).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments."

Farmer, 511 U.S. at 838. Furthermore, "prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Id*., 511 U.S. at 845. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.

Plaintiff fails to allege any facts to demonstrate that the conditions of his confinement deprived him of any basic human need such as food, clothing, shelter, sanitation, medical care or personal safety. Neither classification nor confinement to segregation, either administrative or punitive, implicates the Cruel and Unusual Punishment Clause of the Eighth Amendment unless the conditions themselves are cruel and unusual. Hutto v. Finney, 437 U.S. 678, 686 (1978); Spaight v. Coughlin, 104 F.3d 350 (Table), 1996 WL 518507 (2d Cir. 1996), *cert. denied*, 117 S.Ct. 972

(1997); Young v. Quinlan, 960 F.2d 351, 363 (3d Cir. 1992); Sheley v. Dugger, 833 F.2d 1420, 1428-29 (11th Cir. 1987); Gibson v. Lynch, 652 F.2d 348, 352 (3d Cir. 1981) ("administrative segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment") (citing Hutto), *cert. denied*, 462 U.S. 1137 (1983).

The Constitution does not mandate comfortable prisons. Rhodes, 452 U.S. at 349. Prisons housing "persons convicted of serious crimes cannot be free of discomfort." *Id*. Plaintiff's allegations do not demonstrate inhumane treatment or the substantial risk of serious harm. Nor do they allege that he was deprived of "the minimal civilized measure of life's necessities." Accordingly, Plaintiff fails to allege any facts to demonstrate a violation of the Eighth Amendment with respect to the conditions at the RHU. *Accord* Griffin v. Vaughn, 112 F.3d. 703 (3d Cir. 1997) (restrictive conditions in administrative custody in the Pennsylvania state correctional institutions, in and of themselves, do not violate the Eighth Amendment). Consequently, he has failed to state a claim upon which relief may be granted as to any violation of his rights as protected by the Eighth Amendment.

3. Fourteenth Amendment

Plaintiff's final claim is that Defendants' violated his procedural due process rights. In this regard, the Due Process Clause of the Fourteenth Amendment does not protect every change in the conditions of confinement having a substantial adverse impact on a prisoner. Meachum v. Fano, 427 U.S. 215, 224 (1976). The Due Process Clause shields from arbitrary or capricious deprivation only those facets of a convicted criminal's existence that qualify as "liberty interests." Hewitt v. Helms, 459 U.S. 460 (1983); Morrissey v. Brewer, 408 U.S. 471 (1972). The types of protected liberty interests are not unlimited. The interest must rise to more than an abstract need or desire and must

be based on more than a unilateral hope. Rather, an individual claiming a protected interest must have a legitimate claim of entitlement to it. Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979) (citation omitted).

Thus, the threshold question presented by Plaintiff's due process claims is whether Defendants' actions impacted a constitutionally-protected liberty interest. A liberty interest may arise either from the Due Process Clause itself, or from a statute, rule, or regulation. Hewitt, 459 U.S. at 466. A liberty interest inherent in the Constitution arises when a prisoner has acquired a substantial, although conditional, freedom such that the loss of liberty entailed by its revocation is a serious deprivation requiring that the prisoner be accorded due process. Gagnon v. Scarpelli, 411 U.S. 778, 781 (1973). Interests recognized by the Supreme Court that fall within this category include the revocation of parole, Morrissey, 408 U.S. at 471, and the revocation of probation, Gagnon, 411 U.S. at 778. The Due Process Clause, however, does not create an inherent liberty interest to remain free from administrative segregation. *See, e.g.*, Hewitt, 459 U.S. at 468; Wolff, 418 U.S. at 556; Montayne v. Haymes, 427 U.S. 236, 242 (1976); Sheehan v. Beyer, 51 F.3d 1170, 1175 (3d Cir. 1995); Layton v. Beyer, 953 F.2d 839, 845 (3d Cir. 1992). Accordingly, Plaintiff can succeed under the Due Process Clause only if state law or regulation has created a constitutionally-protected liberty interest in remaining free from administrative detention.

In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court pronounced a new standard for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by due process guarantees. Specifically, the Supreme Court held that prison conditions do not impact a protectable liberty interest unless they result in an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 483 (emphasis added).

Applying this test, the Supreme Court concluded that the prisoner in Sandin did not have a protected liberty interest in remaining free of disciplinary detention or segregation because his thirty-day disciplinary detention, though punitive, did not present a dramatic departure from the basic conditions of his sentence. In making this determination, the Supreme Court looked at two basic factors: 1) the amount of time the prisoner was placed into disciplinary segregation; and 2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive. After reviewing these two factors, the Court concluded that thirty days in disciplinary detention, which was similar in many respects to administrative custody, did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.

In the case of disciplinary or administrative custody, if the inmate had no protected liberty interest in remaining free of such custody, then the inmate was owed no process, in the form of hearings or otherwise, before or during his placement. What is an "atypical and significant hardship" is determined by "what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law." Sandin, 515 U.S. at 486. Here, Plaintiff received a sanction of only thirty days of disciplinary time. Every court, including the Court of Appeals for the Third Circuit, has concluded that confinement in restricted housing for a period of one year or less does not amount to an atypical or significant hardship under the Sandin analysis. *See, e.g.*, Scerbo v. Lowe, 326 Fed. App'x 652, 656 (3d Cir. 2009) (eighteen-month period of confinement in maximum security custody did not implicate a protected liberty interest); Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir.1997)(exposure to conditions of administrative custody for

periods as long as 15 months falls within the expected parameters of sentence imposed).[5]

Finally, it must be noted that a prisoner does not have a constitutional right to be free from being falsely or wrongly accused of conduct that may result in the deprivation of a protected liberty interest. Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485 U.S. 982 (1988). In other words, the mere filing of false charges against an inmate does not constitute a *per se* constitutional violation. *Id*. Before the Supreme Court handed down its opinion in Sandin, the federal courts had determined that the filing of unfounded administrative charges against an inmate may result in a procedural due process violation <u>only</u> when such charges were not subsequently reviewed in a hearing. *Id*. at 952 (an allegation that a prison guard planted false evidence fails to state a claim where the procedural due process protections as required in Wolff v. McDonnell are provided) (citation omitted). Thus, even if false charges impaired a protected liberty interest, as long as prison officials granted the inmate a hearing and an opportunity to be heard, the filing of unfounded charges did not give rise to a procedural due process violation actionable under section 1983. *Accord* Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002); Jones v. Coughlin, 45 F.3d 677 (2d Cir. 1995); Franco v. Kelly, 854 F.2d 584, 587 (2d Cir. 1988); McClean v. Seclor, 876 F. Supp. 695 (E.D. Pa. 1995).

In light of the Supreme Court's ruling in Sandin, however, Plaintiff has not even

---

5. Moreover, Plaintiff has no constitutional liberty interest in the Defendants following the procedures allegedly mandated by state law. River Park, Inc. v. City of Highland Park, 23 F.3d 164, 166 (7th Cir. 1994) ("the Constitution does not require state and local governments to adhere to their procedural promises"); Wilson v. Formigoni, 42 F.3d 1060, 1066 (7th Cir. 1994) ("[S]tate-created procedural requirements do not, standing alone, constitute protected liberty or property interests or create substantive entitlements.") (citations omitted). Hence, neither the deprivation nor the failure to follow state mandated procedures deprived Plaintiff of a liberty interest here.

demonstrated that he had a constitutionally protected liberty interest that was offended by Defendants' actions. *See* <u>Strong v. Ford</u>, 108 F.3d 1386 (Unpublished Opinion), 1997 WL 120757 (9th Cir. 1997) (the alleged making of a false charge, however reprehensible or violative of state law or regulation, does not constitute deprivation of a federal right protected by 42 U.S.C. § 1983 when it does not result in the imposition of an atypical hardship on the inmate in relation to the ordinary incidents of prison life). As such, Plaintiff has failed to state a claim upon which relief may be granted as to any violation of his rights as protected by the Fourteenth Amendment. An appropriate Order follows.

## **ORDER**

**AND NOW**, this 8th day of November, 2010;

**IT IS HEREBY ORDERED** that Defendants' Partial Motion to Dismiss (ECF No. 19) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's remaining retaliation claim is **DISMISSED** in accordance with the Prison Litigation Reform Act, 28 U.S.C. § 1915(e)(2)(B)(ii) and/or 28 U.S.C. § 1915A for failure to state a claim upon which relief can be granted under 42 U.S.C. § 1983.

**IT IS FURTHER ORDERED** that the Clerk of Court mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Petitioner has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

_____
Lisa Pupo Lenihan
United States Magistrate Judge

cc:     Clarence Grantham
       DX - 1182
       SCI Cresson
       POL Box A
       Cresson, PA 16699-0001